IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20 CV 92 MR WCM

KATHERINE MONICA VICKERS, )
ESTATE OF KATHERINE )
MONICA VICKERS, and RUPA )
VICKERS RUSSE, *individually* )
*and as Executor of the Estate* )
*of Katherine Monica Vickers*, )          MEMORANDUM AND
                              )          RECOMMENDATION
            Plaintiffs, )
                              )
v. )
                              )
UNITED STATES OF AMERICA, )
                              )
            Defendant. )
_____ )

This matter is before the Court on the United States' Motion to Dismiss
(Doc. 21). The Motion has been referred to the undersigned pursuant to 28
U.S.C. § 636, is fully briefed, and is ripe for ruling. See Docs. 22, 24, & 25.[1]

I.    Background

      A. Relevant Procedural History

On July 16, 2020, Rupa Vickers Russe ("Russe") filed a Complaint
against the United States of America (the "United States") arising out of the

---

[1] Plaintiffs have also filed a "Motion for Leave to File Amended Complaint, Grant
N.C.G.S. 9(j) Extension, and Accept 9(j) Certification Filing" and a Motion to Join
Additional Parties Defendant. Docs. 17 & 18.  Those motions will be addressed by
separate Order.

1

medical treatment and subsequent death of her mother, Katherine Monica Vickers ("Ms. Vickers"). Doc. 1.   The Plaintiffs are purported to be: (1) Ms. Vickers; (2) Ms. Vickers' Estate; and (3) Russe, both in her individual capacity and as the Executor of Ms. Vickers' Estate. <u>See</u> Doc. 7-2 at 1. It is alleged that Russe also previously acted as an attorney-in-fact for Ms. Vickers pursuant to a Healthcare Power of Attorney.  Doc. 1 at ¶3.

On January 6, 2021, the United States filed the Motion to Dismiss.  Doc. 21.  Plaintiffs filed a response, and the United States replied.  Docs. 24 & 25.

### B. Ms. Vickers' Medical Care

The Complaint describes medical care that Ms. Vickers, who was a veteran of the armed services, received from 1993 until her death on October 16, 2018.

### 1.    VA Medical Center—Washington, DC

Beginning in 1993, Ms. Vickers was treated at the Veterans Administration ("VA") Medical Center in Washington, DC. Doc. 1 at ¶27. While Ms. Vickers was there, a January 2002 CT of her brain showed "cortical atrophy," and MRIs taken in April and October 2003 showed "an area of concern." Doc. 1 at ¶¶40, 54-55, 56.

### 2. Charles George VA Medical Center—Asheville, NC

In December 2006, Ms. Vickers moved to Asheville, North Carolina, and began receiving her primary care locally at the Charles George VA Medical Center ("CGVAMC"). Doc. 1 at ¶30.

Dr. Sarala Rajkumar was Ms. Vickers' primary care physician from December 13, 2006 through approximately February 2, 2008. Doc. 1 at ¶42.

Ms. Vickers then apparently moved to Virginia, and later returned to Asheville. She began receiving primary care at CGVAMC on approximately July 16, 2012. Doc. 1 at ¶32. Dr. Lara Hume began treating Ms. Vickers as her primary care physician at CGVAMC at that time and continued treating her until Ms. Vickers' death in 2018. Doc. 1 at ¶46.

On April 2, 2015, Ms. Vickers called Dr. Hume to request a neurology consult, Doc. 1 at ¶51, though it does not appear that a consult was actually scheduled.

On July 19, 2017, Russe called 911 as Ms. Vickers was experiencing symptoms of "acute delirium, headache, vomiting, a seizure, and attempts at drinking her own vomit." Doc. 1 at ¶¶34 & 36. Ms. Vickers was not taken to the hospital at that time, <u>see</u> Doc. 1 at ¶36; however, her symptoms continued and Russe brought Ms. Vickers to the CGVAMC emergency room on July 21, 2017. Doc. 1 ¶34. A CT scan taken on that date showed a "large heterogeneous mass" and Ms. Vickers was "diagnosed in the [CGVAMC] ER" as having a large

3

mass "that occupied much of her brain." Doc. 1 at ¶37. Additionally, by "at least" this date, Ms. Vickers was "designated a high fall risk." Doc. 1 at ¶86.

### 3. Care by Additional Providers

Plaintiffs allege that from approximately July 25, 2017 through the date of her death on October 16, 2018 Ms. Vickers received "primary care from a coordinated effort" between the CGVAMC and the VA Medical Center in Durham, North Carolina. Doc. 1 at ¶33. However, she "elected to have her neurooncology care provided by the Duke Robert Tisch Cancer Center…." Doc. 1 at ¶39.

With respect to Ms. Vickers' primary care at the VA Medical Center in Durham, Plaintiffs allege that Ms. Vickers was noted as being "independent" (rather than a fall risk), and that on September 13, 2017, during an appointment at the Durham facility, a "Resident" asked Ms. Vickers if she could walk, and that although Ms. Vickers responded, "I think I can," she "stood and attempted to take one step toward the door, and promptly her leg gave out and she fell to the floor." Doc. 1 at ¶91. Ms. Vickers was taken to the emergency room at the Durham VA, but no healthcare provider explained that Ms. Vickers was at risk for hematoma. Doc 1 at ¶95. Upon returning home and discovering a large, painful hematoma, Ms. Vickers returned to the emergency room in Durham to obtain a pain prescription. Doc. 1 at ¶96.

However, Ms. Vickers suffered "immense physical pain for six hours." Doc. 1 at ¶97.

With respect to her cancer treatment, Plaintiffs allege that:

> In approximately November 2017, the mass was confirmed, through biopsy, by the Duke Robert Tisch Cancer Center to be an oligodendroma brain tumor, that had, according to Dr. Dina Randazzo, Ms. Vickers' Neuro-Oncologist, likely been growing in Ms. Vickers' brain for over five years, possibly longer than a decade. Dr. Randazzo informed Ms. Vickers and Ms. Russe that had the tumor been diagnosed earlier, it could have been removed entirely and Ms. Vickers' life and mortality risk would not have been impacted by it.

Doc. 1 at ¶40.

### 4.  Placement in a Nursing Home

"Ms. Vickers required extensive physical support" and was placed in various residential facilities "[a]t different times from July 2017 through October 16, 2018." Doc 1 at ¶66.  For example, she was placed at Madison Health and Rehab Center for an unspecified time, though her "mental behaviors became difficult" to manage, and Ms. Vickers was not allowed to return to that facility. Doc. 1 at ¶¶74-75.

Anthony Smalls, a CGVAMC social worker, informed Russe that there was an in-house long-term care option for Ms. Vickers on the CGVAMC campus, but he discouraged Russe from allowing Ms. Vickers to be placed there "solely because she was a woman" and "stated Ms. Vickers' 'safety' would be at

risk." Doc. 1 at ¶78. Instead, Ms. Vickers was placed by Smalls at Pruitt Health, a "3 star" facility in Raleigh, on July 25, 2018. Doc. 1 at ¶¶66 & 80.

On October 16, 2018 at 3:45 a.m., Ms. Vickers was discovered as being non-responsive. Doc. 1 at ¶81. She died less than three (3) hours later. <u>Id</u>.

### C. Plaintiffs' Claims

Plaintiffs seek compensatory and punitive damages from the United States based on the following claims:

- "Medical Negligence" due to the actions of CGVAMC, specifically including the failure to review Ms. Vickers' "complete medical record," and provide "follow-up" testing;[2]

- "Medical Negligence" due to the actions of the VA Medical Center in Washington DC, specifically including the failure to "properly note diagnosis and/or treatment in Ms. Vickers' medical record;"

- "Medical Negligence" due to the actions of the VA Medical Center in Durham, specifically including the failure to "properly inform" Ms. Vickers and Russe of Ms. Vickers' injury (presumably stemming from the September 13, 2017 fall) and treat that injury;

- "Ordinary Negligence" due to the actions of the VA Medical Center in Durham specifically related to Ms. Vickers' September 18, 2017 fall;

- Wrongful Death and Survival Action;

---

[2] <u>See</u> Doc. 1 at ¶47 (alleging Dr. Hume "never, in six (6) years of treating and being Ms. Vickers' exclusive primary care provider prior to her July 2017 ER visit, noted or acknowledged any details of Ms. Vickers' prior history of ischemic stroke, previous MRIs or the prior CT scan of her brain, all listed in her VA medical record; all of which showed issues in the brain"); <u>see also</u> Doc. 1 at ¶¶ 50 & 57 (alleging neither Dr. Rajkumar nor Dr. Hume followed up on "the significant stroke interventions noted in Ms. Vickers' [Washington, DC VA Medical Center] record," and that Dr. Hume "never ordered any image scan, MRI or CT Scan of Ms. Vickers' brain, even though there was a medical record of issues….").

6

- Breach of Contract against the "Veteran's Affairs Administration;"

- Negligent and/or Intentional Infliction of Emotional Distress; and

- "Gender Discrimination" based on CGVAMC's "placement of Ms. Vickers in a long-term nursing facility based on her sex."

<u>See</u> Doc. 1 at ¶¶98-135.

## II. Legal Standards

### A. Rule 12(b)(1)

A motion to dismiss made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure addresses whether the court has subject-matter jurisdiction to hear the dispute. <u>See</u> Fed. R. Civ. P. 12(b)(1). A dismissal for lack of subject matter jurisdiction should be without prejudice, since in such a context the court is unable to reach the merits of the case. <u>See Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC</u>, 713 F.3d 175, 185 (4th Cir. 2013).

When a defendant makes a facial challenge to subject matter jurisdiction, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges facts sufficient to invoke subject matter jurisdiction." <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir.2009).[3]

---

[3] A "facial challenge" occurs when a defendant contends that the complaint fails to allege facts upon which subject matter jurisdiction can be based. In contrast, a defendant may argue that the jurisdictional allegations in the complaint are not true. "In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply…." <u>Kerns</u>, 585 F.3d at 192.

7

The plaintiff has the burden of proving that subject matter jurisdiction exists. Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir.1999) (citing Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.1991)).

Questions regarding a waiver of sovereign immunity may be resolved via a Rule 12(b)(1) motion. Anderson v. United States, 669 F.3d 161, 164 (4th Cir.2011) (analyzing the United States' limited waiver of immunity under the FTCA and stating that "[w]here the United States has not waived its sovereign immunity, a plaintiff's claim against the United States should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)").

### B. Rule 12(b)(6)

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." Francis v. Giacomelli, 588 F.3d 186, 189 & 192 (4th Cir. 2009); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d

8

at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## III. Discussion

### A. Issues Regarding Plaintiffs' Legal Representation

As noted, Russe filed the Complaint, *pro se*, on behalf of Ms. Vickers, the Estate, and herself.

On September 30, 2020, attorney Brooke Nichole Scott entered a Notice of Appearance stating that she was "substituted in place of pro se Plaintiff Rupa Vickers Russe." Doc. 13.[4]

---

[4] An Order of Administrative Suspension by the North Carolina State Bar dated November 10, 2020 indicates that Ms. Scott's license to practice law was to be suspended on December 10, 2020. On January 19, 2021, an Order of Reinstatement was issued.

Subsequently, Russe was admitted to practice before both the state courts of North Carolina and this Court, <u>see</u> Doc. 23-5 at ¶¶ 9-10, and on December 9, 2020, Russe filed a Notice of Appearance "as counsel for Katherine Monica Vickers, and the Estate of Katherine Monica Vickers." Doc. 16.

Based on the Notices of Appearance filed by Ms. Scott and Russe, it appears that Russe intends to appear on behalf of Ms. Vickers (as counsel) as well as on behalf of the Estate (as counsel and Executor). The undersigned previously noted that "Russe's ability to appear *pro se* for the Estate… is unclear." Doc. 8 at 2 (citing <u>McAdoo v. United States</u>, 1:12cv328, 2014 WL 359043, at *1 (W.D.N.C. Feb. 3, 2014); <u>In re Sanctuary Belize Litigation</u>, No. 18-3309, 2020 WL 42825, at * 2 (D. Md. Jan. 3, 2020)). However, considering the recommendations set forth herein, the undersigned does not believe it is necessary to examine these issues of representation by Russe in any further detail.

Plaintiffs, though, have raised yet another issue relative to counsel. In particular, Plaintiffs contend that their Complaint should be liberally construed, Doc. 24-1 at 2, since, at the time the Complaint was filed by Russe, she was "an unlicensed law school graduate with no training in the Federal Judicial Court system" and her "knowledge of medical malpractice claims was very limited…." Doc. 24-9 at 1-2.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal citation omitted).

Under the circumstances presented, the undersigned has considered the fact that Russe was not licensed to practice law at the time the Complaint was filed.

### B. Choice of Law

Plaintiffs "request that the laws governing the jurisdiction of Washington, D.C. be applied" by this Court with respect to certain of Plaintiffs' claims. See Doc. 1 at ¶15; see also Doc. 23-2 at 2 ("Plaintiffs reassert their request for Washington D.C. law to govern").

Plaintiffs, however, have provided no basis to support the application of Washington, DC law. Although Plaintiffs' Complaint describes some care Ms. Vickers received while she was in Washington, DC, the Complaint (as well as Plaintiffs' administrative claim, discussed below) focuses on CGVAMC's failure to diagnose and treat Ms. Vickers' brain tumor in North Carolina.

Because the acts and omissions about which Plaintiffs complain occurred in North Carolina, it appears that North Carolina law should be applied. See Eades v. United States, 168 F.3d 481, 1999 WL 25549, at *2 (4th Cir.1999)(unpubl.)(explaining that under the FTCA, the United States has

11

waived sovereign immunity "in accordance with the law of the place where the act or omission occurred," that "law of the place" includes both internal substantive law and choice of law rules, and applying North Carolina law to plaintiff's FTCA claim because the act or omission occurred in North Carolina); Turner v. United States, 1:06CV223, 1:07CV23, 1:06CV431, 1:06CV474, 1:07CV673, 2007 WL 9754532, at *6 (M.D.N.C. Dec. 19, 2007)("Pursuant to the FTCA, the United States is liable in accordance with the law of the place where the act or omission occurred, including that place's choice-of-law rules"); Boudreau v. Baughman, 322 N.C. 331, 368 S.E.2d 849, 854 (1988)(North Carolina applies lex loci delicti choice of law rule in negligence cases); Giblin v. National Multiple Sclerosis Soc., Inc., No. 3:07–CV–431–DCK, 2008 WL 4372787, at *4 (W.D.N.C. Sept. 23, 2008)("North Carolina state cases, as well as federal decisions interpreting those precedents and forecasting what policy the courts would likely follow, have consistently relied on lex loci to determine the choice of law in tort cases, particularly those cases involving personal injury or wrongful death").

### C. Subject Matter Jurisdiction

#### 1. Article III Standing by Ms. Vickers

A deceased person does not have Article III standing. See House v. Mitra QSR KNE LLC, 769 Fed. Appx. 783, 787; 2019 WL 6492490 (4th Cir.2019) (unpubl.) ("And at the outset of this suit filed in House's name, House was

deceased; for legal purposes, he did not exist. As the district court appears to have recognized, that amounts to a jurisdictional defect under Article III").

This issue was raised in the undersigned's August 25, 2020 Order. Doc. 8. However, Plaintiffs have provided no authority to indicate that Ms. Vickers may proceed as a party plaintiff in this action.

Accordingly, the undersigned will recommend that any claims asserted by Ms. Vickers be dismissed without prejudice for lack of subject matter jurisdiction. See Southern Walk, 713 F.3d at 185 ("A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits").

### 2.    Sovereign Immunity

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). "Sovereign immunity is jurisdictional in nature," Meyer. 510 U.S. at 475, and "[t]he plaintiff bears the burden of showing that the government has waived sovereign immunity at the motion to dismiss stage." Robinson v. United States Dep't of Educ., 917 F.3d 799, 802 (4th Cir. 2019)(citations omitted); see also Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999)(citing Richmond, Fredericksburg

& Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.1991)("The plaintiff has the burden of proving that subject matter jurisdiction exists")).

### a. Tort Claims

The FTCA provides a limited waiver of sovereign immunity for certain tort claims. 28 U.S.C. § 1346(b). Specifically, the statute allows a district court to consider claims against the United States for money damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).

Here, the United States asserts that subject matter jurisdiction over Plaintiffs' claim is lacking because (1) Plaintiffs' tort claims were not timely presented in an administrative claim; (2) some of the claims were not presented at all; (3) some Plaintiffs did not present administrative claims; and (4) some claims are based on the actions of actors other than the United States or its agencies. Doc. 22 at 10.

### i. Timeliness

The timeliness of Plaintiffs' administrative claim is not a jurisdictional issue, and therefore it is addressed below, following consideration of the other jurisdictional questions raised by the United States.

### ii. Administrative Presentment: Claims Presented

"[P]rior to proceeding with FTCA claims in federal court, a plaintiff must first have presented her claim to the appropriate federal agency for determination within two years of the claim's accrual." Wood v. United States, 209 F.Supp.3d 835, 840 (M.D.N.C. 2016)(citing Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994)). The "requirement of filing an administrative claim is jurisdictional and may not be waived." Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986); see also Kokotis v. United States Postal Service, 223 F.3d 275, 278 (4th Cir. 2000)(quoting Henderson, 785 F.2d at 123); Parrish v. United States, No. 1:17cv70, 2020 WL 1330350, at * 3 (N.D. W.Va. March 23, 2020)(finding that administrative exhaustion "is a jurisdictional prerequisite because Congress has clearly stated it to be so. Accordingly, Fourth Circuit precedent, read together with [Fort Bend County v. Davis, 139 S. Ct. 1843 (2019)] and [McNeil v. United States, 508 U.S. 106 (1993)] and the language of the FTCA, confirms the administrative exhaustion requirement to be a necessary predicate to this Court's exercise of jurisdiction").

A claim must contain: "1) written notice sufficient to cause the agency to investigate, and 2) a sum-certain value on the claim." Ahmed, 30 F.3d at 517 (citing Adkins v. United States, 896 F.2d 1324, 1326 (11th Cir.1990)). While a claimant need not give the government notice of every possible theory of liability, he or she must give notice of the factual basis of the claim. Wood, 209

F.Supp.3d at 840 (finding plaintiff's SF-95, although styled as a medical malpractice claim, adequately presented an ordinary negligence claim as well because both claims asserted the "same operative facts giving rise to injury and liability"); Harper v. United States, No. 2:09-cv-973, 2011 WL 1299445, at *1 (S.D. W.Va. March 30, 2011)(explaining that "[i]n determining whether the notice is sufficient under the FTCA, a claimant must provide a 'factual predicate so that his claim can be investigated'").

Here, a Standard Form 95 ("SF-95") was submitted by "Estate of Katherine Monica Vickers. Executor of Estate, Rupa Vickers Russe" and asserted claims for:

> Mental and physical suffering of deceased, Katherine Vickers; loss of earning capacity due to decreased life span; physical pain and suffering, emotional suffering by deceased due to diagnosis, loss of familial relationships; Present case value of deceased and loss of consortium, tangible and intangible, suffered by deceased's three surviving children, and three surviving grandchildren.

> Doc. 21-1 at 8 & 13.[5]

The SF-95 further provided:

_____

[5] The parties disagree regarding the date on which the SF-95 was presented. Plaintiffs contend that they properly filed their claims with the Department of Veterans Affairs on approximately October 3, 2019. Doc. 1 at ¶11. The United States argues that Plaintiffs' October 2019 submission was incomplete because it was not signed and that Plaintiffs' claim was not properly presented until December 12, 2019, when Plaintiffs submitted a signed SF-95. Doc. 22 at 10. Other than Russe's signature, the two SF-95 forms at issue are identical. Doc. 21-1.

> Ms. Vickers', beginning in 2005 for a number of years, and then again from 2012 until 2017 received all her medical care at the Asheville VA, and under the care of Dr. Laura Hume. Ms. Vickers' died due to the negligent medical care of Dr. Hume and the Asheville VA in failing to identify the brain tumor while it was small enough to be remedied by surgery, even though Ms. Vickers' record shows a decrease in mental function years before the diagnosis; and due to the negligent caretaking she received at the Pruitt-Health Raleigh care…facility the VA placed her in in Durham, NC….

> Doc. 21-1 at 8 & 13.

The SF-95 did not mention care Ms. Vickers received at the VA Medical Center in Washington DC or Ms. Vickers' September 13, 2017 fall, and therefore Plaintiffs did not present an administrative claim based on those events.

Likewise, although the SF-95 included information regarding Ms. Vickers' placement at the Pruitt-Health facility in Raleigh, the SF-95 did not provide facts indicating that Ms. Vickers' placement at that facility was discriminatory.[6]  Compare Holliday v. United States, No. 2:18-0006-RMG, 2019 WL 1572980, at *3 (D.S.C. April 11, 2019)("the SF-95s presented the agency with sufficient facts to put it on notice of the medical incident

---

[6] The SF-95 did state that, at the time of Ms. Vickers' death, "she was in a VA authorized CNH facility because Asheville VA did not have an appropriate facility" for Ms. Vickers based on her age, physical limitations and "the environmental vulnerability she had due to the limited cognition caused by the large brain tumor…." Doc. 21-1 at 9 & 14.  The undersigned, though, does not read this statement as suggesting Ms. Vickers was discriminated against because of her gender.

17

underlying Mr. Holliday's claim and, therefore, that Plaintiffs satisfied the administrative exhaustion requirement of the FTCA").

Accordingly, because the United States was not given sufficient notice of these allegations, subject matter jurisdiction over claims arising from these incidents is lacking and the undersigned will recommend that Plaintiffs' associated claims be dismissed without prejudice.[7]

### iii. Administrative Presentment: Claimants

Additionally, the United States argues that "[e]ach and every claimant must present an administrative claim to the appropriate federal agency" and that "Ms. Vickers never submitted an SF95 to the VA, and Ms. Russe did not submit a claim of her own." Doc. 22 at 17. (citing 28 U.S.C. §2675(a) ("the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied…"); 28 C.F.R. §14.2 ("a claim shall be deemed to have been presented when a Federal agency receives from a

---

[7] Plaintiffs argue that they amended their administrative claim by sending a copy of the complaint they planned to file to the United States in June 2020. Doc. 24-1 at 10-11. However, Plaintiffs filed suit approximately three weeks later, on July 16, 2020, prior to receiving a final denial from the VA. Id. at 10. 38 C.F.R. §14.604(c) provides that "[u]pon the timely filing of an amendment to a pending claim, the Department of Veterans Affairs shall have 6 months in which to make a final disposition of the claim as amended and the claimant's option under 28 U.S.C. 2675(a) shall not accrue until 6 months after the filing of the amendment." That is, if the mailing of Plaintiffs' proposed complaint did amend Plaintiffs' administrative claim, then—by filing suit before they received a denial from the Department or before the expiration of 6 months after the submission of their amended claim—Plaintiffs did not exhaust their administrative remedies, such that the entirety of Plaintiffs' Complaint would be subject to dismissal for lack of subject matter jurisdiction.

18

claimant, his duly authorized agent or legal representative, an executed Standard Form 95….")).

With respect to Ms. Vickers, as discussed above, the undersigned will recommend that any claims by Ms. Vickers be dismissed for lack of standing.

As for Russe, the SF-95, like the Complaint in this case, was somewhat unclear as to the capacity or capacities in which Russe was attempting to appear. In particular, "Estate of Katherine Monica Vickers. Executor of Estate Rupa Vickers Russe" was shown in the box on the SF-95 that called for the name of the claimant and the claimant's personal representative, if any. Doc. 21-1 at 6 & 11.

The United States Department of Veterans Affairs, Office of General Counsel, responded to the October 2019 SF-95 submission by instructing Russe to sign the form, but did not likewise object to the lack of separate claim forms or instruct Plaintiffs to submit a separate form for each claimant. See Doc. 21-1 at 15.

The SF-95 submitted in December 2019 was signed by Russe. Doc. 21-1 at 6.

Under these circumstances, the undersigned is not persuaded that the presentation of forms by the Estate and Russe concerning claims stemming from Ms. Vickers' medical treatment by CGVAMC was inadequate.

### iv. Actions by Actors Other Than the United States

Finally, the United States argues that Plaintiffs' claims related to Ms. Vickers' "non-VA nursing home care" cannot be brought against the United States. Doc. 22 at 17-18 (asserting that the Rose Manor Facility in Durham, the Madison Health and Rehab Center, and Pruitt Health in Raleigh are not "alleged to be facilities of the VA or other United States agency").

In response, Plaintiffs state that the allegations in the Complaint "provide details about the actions of the non-VA nursing home in order to bring forth a cognizable claim that the Defendant engaged in Gender Discrimination" and further that the United States "made Pruitt Health…its agent" such that the FTCA covers Plaintiffs' claim for negligent care provided at that facility. Doc. 24-1 at 16-17.

As discussed above, facts upon which a claim of gender discrimination could be based were not properly presented in the SF-95. Accordingly, it is unnecessary to determine whether claims related to Ms. Vickers' "non-VA nursing home care" can be asserted against the United States pursuant to the FTCA.

### b. Contract Claim

The Tucker Act confers jurisdiction only on the United States Court of Federal Claims to hear cases involving express or implied contracts with the United States. 28 U.S.C. § 1491(a)(1). The Little Tucker Act confers

concurrent jurisdiction on district courts to hear contract claims involving the United States that do not exceed $10,000. 28 U.S.C. § 1346(a)(2); <u>Village of Bald Head Island v. U.S. Army Corps of Eng'rs</u>, 833 F. Supp. 2d 524, 534 (E.D.N.C. 2011), aff'd, 714 F.3d 186 (4th Cir. 2013). "If a plaintiff's claim is worth more than $10,000, she must bring the action in the Court of Federal Claims." <u>Goins v. Speer</u>, No. 4:16-CV-48-D, 2017 WL 3493607, at * (E.D.N.C. Aug. 14, 2017) (citing <u>Randall v. United States</u>, 95 F.3d 339, 347 (4th Cir. 1996)).

Here, Plaintiffs allege that as a result of the United States' breach of contract, each Plaintiff suffered damages exceeding this Court's $10,000 jurisdictional limit. <u>See</u> Doc. 1 at ¶124. Accordingly, the undersigned has considered whether to recommend that this claim be transferred to the Court of Federal Claims.

"A district court may decline to transfer a case, however, where a claim is 'plainly barred' and the court 'has no doubt that the Court of Claims would summarily grant the government's motions to dismiss.'" <u>Reaves v. Hagel</u>, No. 5:12–CV–795–FL, 2013 WL 5674981, at *9 (E.D.N.C. Oct. 17, 2013) (quoting <u>United States v. Welborn</u>, 495 F.Supp. 833, 837 (M.D.N.C.1980) (dismissing counterclaim within the exclusive jurisdiction of the Court of Claims without prejudice as futile); <u>Martin v. Sallie Mae, Inc.</u>, No. 5:07–cv–00123, 2007 WL

4305607, at *4 (S.D.W.Va.2007) (commenting that courts should not transfer where doing so would be "futile").

Here, Plaintiffs have not alleged sufficient facts that would support recovery under a breach of contract theory.  See Sweazey v. United States ex rel. Veterans Admin Medical Center, 69 Fed. Appx. 435, 2003 WL 21540907, at *2 (10th Cir. July 9, 2003)(unpubl.)(finding plaintiff's allegations, arising out of the VA's medical treatment of her husband and the Marine Corps' action of permitting her deceased husband to purchase and use cigarettes while a minor, were "traditional tort claims of negligence and/or medical malpractice claims")(citing Schism v. United States, 316 F.3d 1259, 1268 (Fed.Cir.2002), cert. denied, 539 U.S. 910, 123 S.Ct. 2246, 156 L.Ed.2d 125 (2003); see also Thundathil v. United States, No. 19-1008C, 2021 WL 945100 (Fed. Cl. March 12, 2021)(plaintiff's "bare, conclusory allegation of the existence of an implied-in-fact contract" warranted dismissal of plaintiff's breach of contract claim premised on plaintiff's discharge from military service and subsequent denial of healthcare benefits by the VA).  Accordingly, transferring this claim would be futile.

The undersigned will therefore recommend that Plaintiffs' breach of contract claim be dismissed without prejudice.

### D. Failure to State a Claim

The United States also asserts that Plaintiffs' claims for "Medical Negligence" should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

#### 1. Timeliness of Plaintiffs' Claim

The FTCA provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate agency within two years after such claim accrues…." 28 U.S.C. §2401(b). Although liability under the FTCA is determined "in accordance with the law of the place where the act or omission occurred," 28 U.S.C. §1346(b), "federal law determines when a claim accrues." Gould v. U.S. Dept. of Health & Human Services, 905 F.2d 738, 742 (4th Cir. 1990)(en banc).

Under the FTCA, a medical malpractice claim accrues when the plaintiff discovers both his injury and its cause. Gould 905 F.2d at 742 (citing United States v. Kubrick, 444 U.S. 111, 120, 100 S.Ct. 352, 358, 62 L.Ed.2d 259 (1979)); Kerstetter v. United States, 57 F.3d 362, 364 (4th Cir. 1995) ("Accrual of a claim in medical malpractice occurs when the plaintiff became aware – or would have become aware through the exercise of due diligence – both of the existence of injury and its cause"); Holland v. United States, 302 F.Supp.2d 484, 487 (M.D.N.C. 2004)("For a claim to accrue under Kubrick, a plaintiff need not know that the cause of injury was the result of negligence, nor the precise medical reason for the injury, nor the federal status of the doctors involved,

nor have a legal understanding of the nature of the claim"); <u>Hahn v. United States</u>, 313 Fed.Appx. 582, 585 (4th Cir. 2008), <u>cert. denied</u>, 556 U.S. 1167 (2009)(medical malpractice claim under FTCA will accrue "even if the claimant does not know the precise medical reason for the injury, provided that he knows or should know that some aspect of the medical treatment caused the injury").

The FTCA's statute of limitations is a procedural requirement, not a jurisdictional one. <u>United States v. Kwai Fun Wong</u>, 575 U.S. 402, 420, 135 S.Ct. 1625, 1638, 191 L.Ed.2d 533 (2015) ("we hold that the FTCA's time bars are nonjurisdictional and subject to equitable tolling").

Here, the United States asserts that Plaintiffs' claims accrued "no later than" July 2017, when Ms. Vickers was diagnosed with a brain tumor. Doc. 22 at 13; <u>see also</u> <u>id</u>. at 11 (citing Doc. 1 at ¶19 ("Katherine Monica Vickers' had a very large disease of the brain, an oligliodendroma brain tumor, that at the time of discovery in July 2017 occupied the entire left frontal lobe of her brain")).

Plaintiffs, in contrast, assert that the statute of limitations did not begin to run until Plaintiffs were on notice of "who caused the injury"; such notice, Plaintiffs argue, occurred "at the earliest Summer 2019," when they received certain medical records from the VA. Doc. 24-1 at 12; Doc. 23-5 at 3.

With respect to "cases involving a failure to diagnose, a cause of action does not necessarily accrue when the malady is finally diagnosed, but rather when the earlier failure to diagnose is discovered." Adkins v. United States, 923 F.Supp.2d 853, 858 (S.D. W.Va. 2013)(discussing Miller v. United States, 932 F.2d 301, 306 (4th Cir. 1991)(affirming district court's grant of summary judgment and holding that a "wrongful death claim based on failure to diagnose breast cancer in a timely manner accrued at the latest on April 8, 1984," the date on which the woman recognized the earlier failure to order a mammogram); Drazen v. United States, 762 F.2d 56 (7th Cir. 1985)(claim based on failure to diagnose tumor accrued on date plaintiff should have inquired into the possible role government played by failing to follow up on the results of an x-ray examination); Augustine v. United States, 704 F.2d 1074, 1978 (9th Cir. 1983)("The issue of accrual in this case thus depends upon when and if plaintiff discovered or through the exercise of reasonable diligence should have discovered that the failure of his doctors to diagnose, treat, or warn him led to his deteriorating physical condition")).

Applying these principles, Plaintiffs' claims accrued when Plaintiffs discovered, or should have discovered, that Ms. Vickers' providers allegedly failed to diagnose and treat her brain tumor. Adkins, 923 F.Supp.2d at 858.

In that regard, the undersigned is not persuaded that, at this stage and based on the current record, Plaintiffs' claims should be deemed to have

accrued in July 2017, when Ms. Vickers' tumor was discovered. See Doc. 1 at ¶19. That is, it is not apparent that "all facts necessary" to dismiss Plaintiffs' medical malpractice claim as time barred "clearly appear 'on the face of the complaint.'" Dickinson v. Univ. of N. Carolina, 91 F. Supp. 3d 755, 763 (M.D.N.C. 2015) (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)); see also McCall-Scovens v. Blanchard, No. ELH-15-3433, 2016 WL 6277668, at *9 (D.Md. Oct. 27, 2016) ("Accrual may turn on when and if plaintiff discovered or through the exercise of reasonable diligence should have discovered that the failure of [her] doctors to diagnose, treat, or warn [her] led to [her] deteriorating physical condition.")(internal quotations omitted, modification in McCall-Scovens).[8]

---

[8] The United States also suggests that Plaintiffs' claims accrued in November 2017, see Doc. 22 at 12-13, when the mass in Ms. Vickers' brain was confirmed to be a tumor that had "likely been growing for over 5 years, possibly longer than a decade" and Ms. Vickers and Russe were informed by Dr. Randazzo that "had the tumor been diagnosed earlier, it could have been removed entirely and Ms. Vickers' life and mortality risk would not have been impacted by it." Doc. 1 at ¶40. These allegations do indicate there is a possibility that Plaintiffs should have been on notice at this point that there had been a potential failure to diagnose Ms. Vickers' tumor. However, as Plaintiffs do not also allege that Dr. Randazzo stated affirmatively that the tumor could (or should) have been found earlier, this issue involves factual determinations that could be considered more fully on a more complete record.

The undersigned therefore will recommend that the United States' Motion to Dismiss, to the extent it seeks dismissal of Plaintiff's claims on the theory that they were untimely presented, be denied.[9]

## 2. Rule 9(j) Certification

"[A] claimant has a FTCA cause of action against the government only if she would also have a cause of action under state law against a private person in like circumstances." Anderson v. United States, 669 F.3d 161, 164 (4th Cir. 2011); see also 28 U.S.C. § 2674; 28 U.S.C. § 1346(b)(1). "Thus, the substantive law of the state where the cause of action arises applies." Boula v. United States, No. 1:11CV366, 2013 WL 1343547 at *2 (M.D.N.C. April 2, 2013) (applying North Carolina law to plaintiff's FTCA claim alleging medical malpractice against United States for care received at Durham VA Medical Center).

Here, as the acts giving rise to Plaintiffs' claims occurred in North Carolina, North Carolina substantive law should apply to Plaintiffs' FTCA claims. Boula, 2013 WL 1243547, at *2.

N.C.G.S. §1A-1, Rule 9(j) ("Rule 9(j)") provides:

> Medical malpractice.--Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable

---

[9] In light of this recommendation, the undersigned does not reach Plaintiffs' alternative argument that the "continuous treatment" theory renders their claims timely.

27

standard of care under G.S. 90-21.12 shall be dismissed unless:

(1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;

(2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or

(3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

By its text, unless the exception for *res ipsa loquitur* applies, Rule 9(j) "requires that any complaint alleging medical malpractice contain the pre-filing certification of a medical expert." <u>Lauer v. United States</u>, No. 1:12cv41-MR, 2013 WL 566124, at *3 (W.D.N.C. Feb. 13, 2013)(citing Rule 9(j)). This pre-filing certification requirement "is a substantive element to allege that the defendant has failed to comply with the appropriate standard of medical care; that is, one element of the negligence claim." <u>Lauer</u>, 2013 WL 566124, at *4; see also <u>Littlepaige v. United States</u>, 528 Fed. Appx. 289, 293 (4th Cir.

2013)(unpubl.)("where applicable, a Rule 9(j) certification is a mandatory requirement for a plaintiff in a North Carolina medical malpractice action."); Boula, 2013 WL 1343547 at *2 ("federal district courts in North Carolina have generally applied Rule 9(j) as a substantive requirement in medical malpractice claims asserted pursuant to the FTCA")(collecting cases); Gryder v. Holder, No. 1:14cv112, 2014 WL 5475035, at *3 (W.D.N.C. Sept. 26, 2014), report and recommendation adopted, 2014 WL 5475031 (W.D.N.C. Oct. 29, 2014)("Federal Courts in North Carolina have routinely required Rule 9(j) certification in medical malpractice claims asserted pursuant to the Federal Tort Claims Act").

An initial issue presented in this case is determining what claims should be considered as being encompassed by Plaintiffs' claim for medical negligence. The undersigned finds that Plaintiffs' claim for negligence, based on the actions of CGVAMC, should be considered part of Plaintiffs' malpractice claim, and not a separate claim that stands alone. See Littlepaige v. United States, 528 Fed. Appx. 289, 293 (4th Cir. 2013)(unpubl.)(alleged failure to provide special care to prevent falling and failure to diagnose and properly treat decedent while he was in the Hospital's care "clear[ly]...sound[ed] in medical malpractice, not ordinary negligence"); Sharpe v. Miller, 3:15-cv-325-RJC-DCK, 2016 WL 2988984, at *2 (W.D.N.C. May 20, 2016) ("Any negligence or wrongful death claim brought against hospitals or hospital providers

29

pertaining to the provision of professional medical services or clinical patient care, therefore, sounds in medical malpractice and is not a claim for ordinary negligence. Consequently, such actions must be certified per Rule 9(j)") (internal citation omitted); <u>Wood</u>, 209 F.Supp.3d at 841 ("Thus, operative facts—not labels—put parties on notice of whether they are facing a claim for medical malpractice or for ordinary negligence").

Similarly, Plaintiffs' claims for "wrongful death and survival," and "intentional and/or negligent infliction of emotional distress" are based on medical care received by Ms. Vickers prior to her death, and fall within the scope of a medical malpractice action, N.C.G.S. §90-21.11(2), and therefore are subject to the certification requirement of Rule 9(j). <u>See</u> <u>Bennett v. Hospice & Palliative Care Center of Alamance Caswell</u>, 246 N.C.App. 191, 195, 783 S.E.2d 260, 263 (2016) (affirming dismissal of, <i>inter alia</i>, plaintiff's claims for wrongful death, medical negligence, negligence, and emotional distress of decedent and decedent's survivors based on failure to include Rule 9(j) certification to the extent such claims were based on actions concerning "the provision (or lack thereof) of healthcare to Plaintiff's mother" but finding no Rule 9(j) certification was required for claims based on mishandling of decedent's body following death); <u>Estate of Williams-Moore v. Alliance One Receivables Management, Inc.</u>, 335 F.Supp.2d 636, 649 (M.D.N.C. 2004) ("Plaintiff has not complied with the Rule 9(j) certification requirements, and

his medical malpractice/wrongful death claim against Duke Health should be dismissed"); <u>Nichols v. United States</u>, No. 5:09-CV-196-BO, 2010 WL 11622662 at *4 (E.D.N.C. March 12, 2010) ("Plaintiffs' negligent infliction of emotional distress claim must also be dismissed as a result of Plaintiffs' failure to comply with Rule 9(j). Negligent infliction of emotional distress is not an end run around Rule 9(j) in medical malpractice cases").[10]

Plaintiffs' Complaint did not include a Rule 9(j) certification. Doc. 1. Instead, Plaintiffs (1) alleged that the doctrine of *res ipsa loquitur* applied such that no 9(j) certification was required; and (2) moved "to extend the statute of limitations for a period not to exceed one hundred twenty (120) days" because they needed additional time "to comply with Rule 9(j)." Doc. 1 at ¶¶148-170; 173.[11] These arguments are addressed in turn.

---

[10] Further, to the extent Plaintiffs are attempting to allege a claim for intentional infliction of emotional distress, Plaintiffs do not allege "extreme or outrageous conduct" necessary to support such a claim. <u>See Guthrie v. Conroy</u>, 152 N.C.App. 15, 21 (2002)(elements of an intentional infliction of emotional distress claim are: (1) extreme and outrageous conduct by the defendant, (2) which is intended to cause or recklessly does cause, (3) severe emotional distress); <u>Hogan v. Forsyth Country Club Co.</u>, 79 N.C.App. 483, 493 (1986) (quoting Restatement (Second) Torts, § 46 comment (d) (1965)("The tort is reserved for conduct which is utterly intolerable in a civilized community").

[11] Plaintiffs' Complaint also alleges that the requirements of Rule 9(j) are unconstitutional. Doc. 1 at ¶¶171-172. However, to the extent Plaintiffs' challenge is made under the North Carolina Constitution, "federal courts generally refrain from declaring state laws invalid under state constitutions." <u>Smith v. U.S.</u>, No. 1:10CV112, 2011 WL 4899933, at *17 n. 16 (M.D.N.C. Oct. 14, 2011) (citing <u>Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541, 547 (1949) (ruling that question of whether state statute violated state constitution "is ultimately for the state courts, and since they

31

## a. Res Ipsa Loquitur

"The doctrine of res ipsa loquitur applies when (1) direct proof of the cause of an injury is not available, (2) the instrumentality involved in the accident is under the defendant's control, and (3) the injury is of a type that does not ordinarily occur in the absence of some negligent act or omission." Alston v. Granville Health Sys., 221 N.C. App. 416, 419, 727 S.E.2d 877, 879 (N.C. Ct. App. 2012) (citation omitted); see also Muhammad v. United States, No. 5:11-CT-3126-FL, 2012 WL 3957473, at *6 (E.D.N.C. Sept. 10, 2012).

North Carolina courts are "reluctant to apply the doctrine [of *res ipsa*] in medical malpractice cases," Campbell v. Duke University Health System, Inc., 203 N.C.App. 37, 43-44, 691 S.E.2d 31, review denied 346 N.C. 434, 702 S.E.2d 220 (2010), and "there is a strong presumption under North Carolina law that, in the medical malpractice context, *res ipsa loquitur* will not apply." Littlepaige, 528 Fed.Appx. at 295; see also Wood 209 F.Supp.3d at 845 ("The doctrine rarely applies in medical malpractice actions. This is due in part to

---

have made no contrary determination, [federal courts] shall presume ... that the statute conforms with the state constitution")). To the extent Plaintiffs' argument is made under the United States Constitution, such an argument has been rejected in this district. See Baker v. U.S., No. 2013 WL 211254, at *6 (W.D.N.C. Jan. 18, 2013)("Baker asserts that Rule 9(j) 'violate[s] fundamental [constitutional] rights of access to the courts; due process, and equal protection under law.' Baker's argument fails." (internal citations omitted)).

the centrality of expert testimony in most medical malpractice actions")
(internal citation omitted).

"North Carolina courts have…articulated a bright-line rule that a malpractice claim may not be brought on a theory of *res ipsa loquitur* unless the facts alleged are such that 'the negligence complained of must be of the nature that a jury – through common knowledge and experience – could infer.'" Littlepaige, 528 Fed.Appx. at 296 (quoting Diehl v. Koffer, 140 N.C.App. 375, 536 S.E.2d 359, 362 (2000)); see also Wood, 209 F.Supp.3d at 845 ("a plaintiff must be able to show, 'without the assistance of expert testimony—that the injury was of a type not typically occurring in the absence of some negligence by defendant.'") (quoting Robinson v. Duke Univ. Health Sys., 229 N.C.App. 215, 225, 747 S.E.2d 321, 329 (2013) (emphasis added by Wood).

"When a plaintiff "asserts in his pleading" that his injuries were caused directly by the failure of medical personnel to provide adequate care, the doctrine of *res ipsa loquitur* does not apply." Lauer, 2013 WL 566124 at *5 (citing Alt v. John Umstead Hospital, 125 N.C.App. 193, 199, 479 S.E.2d 800, review denied, 345 N.C. 639, 483 S.E.2d 702 (1997)).

Here, Plaintiffs have alleged that Ms. Vickers sustained injuries as a direct result of CGVAMC's failure to timely diagnose and treat her brain tumor. See Wright v. Wakemed, 238 N.C.App. 603, 607, 767 S.E.2d 408, 412 (2014)("Plaintiff has explicitly alleged that she was injured in a specific

33

manner by a specific act of negligence, a fact that bars her from any attempt to rely on the doctrine of res ipsa loquitur"). Therefore, it appears that expert testimony would be necessary for several purposes, including to explain what Ms. Vickers' medical records showed, whether Ms. Vickers' presentation indicated further investigation was necessary, and whether the failure to conduct such investigation was outside the applicable standard of care.

### b. Plaintiffs' Extension Request

The next question, then, is whether Plaintiffs' failure to include a certification bars their claims.

A Rule 9(j) review must be completed prior to the filing of a complaint, and failure to complete that review pre-suit is a basis for dismissal. <u>Thigpen v. Ngo</u>, 355 N.C. 198, 204, 558 S.E.2d 162, 166 (2002)("[t]he legislature specifically drafted Rule 9(j) to govern the initiation of medical malpractice actions and to require physician review as a condition for filing the action. The legislature's intent was to provide a more specialized and stringent procedure for plaintiffs in medical malpractice claims through Rule 9(j)'s requirement of expert certification prior to the filing of a complaint"); <u>Brown v. Kindred Nursing Centers East, LLC</u>, 364 N.C. 76, 692 S.E.2d 87 (2010)(Rule 9(j) certification must take place prior to filing the complaint; "the rule requires [the court] to determine whether certification occurred before plaintiff challenged the overall medical care at issue"); <u>Vaughn v. Mashburn</u>, 371 N.C.

428, 441, 817 S.E.2d 370, 379 (2018)(emphasizing that "in a medical malpractice action the expert review required by Rule 9(j) must occur before the filing of the original complaint" but holding that a plaintiff may amend a defective complaint to make clear that the "expert review required by Rule 9(j) occurred before the filing of the original complaint").

Significantly, although Rule 9(j) provides that a North Carolina superior court judge "may allow a motion to extend the statute of limitations for a period not to exceed 120 days to file a complaint in a medical malpractice action," such an extension extends the time for a plaintiff to file the complaint; it does not allow a plaintiff to file a complaint without a 9(j) certification, and then seek additional time to obtain the required certification. See Brown, 692 S.E.2d at 91 ("the trial court had no authority to extend the statute of limitations in order for plaintiff to file a '9 J statement'"); Boyd v. Rekuc, 246 N.C.App. 227, 231,782 S.E.2d 916, 918 (2016)(a subsequent complaint is not time-barred "*if* it asserts that the Rule 9(j) expert review occurred *before the original complaint was filed*") (emphasis in original); Alston v. Hueske, 244 N.C.App. 546, 781 S.E.2d 305 (2016)(rule allowing 120 day extension may not be used to amend a previously filed complaint in order for it to comply with the medical malpractice pleading requirements; permitting amendment of a complaint to add the expert certification where the expert review occurred after the suit was filed would conflict directly with the clear intent of the legislature); Savage v.

35

United States, No. 5:10CT3169FL, 2011 WL 3664798, at * 2 (E.D.N.C. Aug. 18, 2011)(explaining that the North Carolina Supreme Court has held that a plaintiff may not be granted an extension of time to amend his initial complaint to include the required 9(j) certification and that failure to include the certification leads to dismissal).

Because Plaintiffs' Complaint did not include a Rule 9(j) certification and did not allege facts that would support the application of *res ipsa loquitur*, the undersigned will recommend dismissal of Plaintiffs' medical negligence claims on this basis without prejudice.[12]

---

[12] The United States presents the Rule 9(j) issue as a failure to state a claim pursuant to Rule 12(b)(6). However, as set out above, the FTCA provides a "limited waiver" of the United States' sovereign immunity only to the extent a claimant "would also have a cause of action under state law against a private person in like circumstances," Anderson, 669 F.3d at 164, and federal courts in North Carolina have generally applied Rule 9(j) as a substantive requirement of a medical malpractice claim asserted pursuant to the FTCA. Accordingly, Plaintiffs' failure to state a claim appears to have jurisdictional significance, and therefore the undersigned recommends dismissal without prejudice. See Dunn v. United States Dept. of Veterans Affairs, No. 3:18cv699, 2019 WL 6842537, at *7 (E.D. Va. Dec. 19, 2019) ("federal courts lack Rule 12(b)(1) jurisdiction over a medical malpractice claim that occurred in Virginia, brought under the FTCA, when the plaintiff did not comply with the VMMA's expert certification requirement").

IV.    Recommendation[13]

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss (Doc. 21) be **GRANTED** as follows:

1.    That all claims asserted by Katherine Monica Vickers be **DISMISSED WITHOUT PREJUDICE**;

2.    That Plaintiffs' claims against the United States based on the alleged negligence of the Washington, D.C. Veterans Administration Medical Center and the Durham Veterans Administration Medical Center, and for alleged gender discrimination be **DISMISSED WITHOUT PREJUDICE**;

3.    That Plaintiffs' breach of contract claim against the United States be **DISMISSED WITHOUT PREJUDICE**; and

4.    That Plaintiffs' claims against the United States based on the alleged medical negligence of the Charles George Veterans Administration Medical Center be **DISMISSED WITHOUT PREJUDICE.**

Signed: May 6, 2021

W. Carleton Metcalf
United States Magistrate Judge

---

[13] Because these recommendations, if accepted, would dispose of the entirety of Plaintiffs' Complaint, the undersigned has not reached the United States' arguments regarding insufficient service of process or venue.  Doc. 22 at 23-24.

37

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

38