# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
### CIVIL CASE NO. 1:20-cv-00092-MR-WCM

| | |
|---|---|
| KATHERINE MONICA VICKERS, ESTATE OF KATHERINE MONICA VICKERS, and RUPA VICKERS RUSSE, *individually and as Executor of Estate of Katherine Monica Vickers*, | ) ) ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF DECISION AND ORDER**

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss [Doc. 21]; The Magistrate Judge's Memorandum and Recommendation [Doc. 28] regarding the disposition of that motion; the Plaintiffs' Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. 29]; the Defendant's Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. 33]; the Plaintiffs' Motion to Supplement Evidence [Doc. 32]; and the Plaintiffs' Motion to Adopt Supplemental Authority.  [Doc. 40].

# I. PROCEDURAL BACKGROUND

On July 16, 2020, the Plaintiffs initiated this action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. [Doc. 1]. The Plaintiffs' Complaint asserted nine causes of action: medical negligence based on events at the Charles George VA Medical Center ("CGVAMC"), medical negligence based on events at the Washington D.C. VA Medical Center ("WDCVAMC"), medical and ordinary negligence based on events at the Durham VA Medical Center ("DVAMC"), wrongful death and survival, breach of contract, intentional and negligent infliction of emotional distress, and gender discrimination. [Id. at ¶¶ 98-135]. On January 6, 2021, the Defendant moved to dismiss the Plaintiffs' Complaint under Rules 12(b)(1), (b)(3), (b)(5) and b(6) and Rule 4(m) of the Federal Rules of Civil Procedure.[1] [Doc. 21].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, the Honorable W. Carleton Metcalf, United States Magistrate Judge, was designated to consider the Defendant's Motion to Dismiss and

---

[1] Before the Defendant moved to dismiss the Plaintiffs' Complaint, the Plaintiffs also filed two motions: (1) a Motion for Leave to File an Amended Complaint, Grant N.C.G.S. 9(j) Extension, and Accept 9(j) Certification Filing ("Motion to Amend") [Doc. 17] and (2) a Motion to Join Lara Hume, MD, as a defendant ("Motion to Join") [Doc. 18]. The Magistrate Judge denied these motions. [Doc. 27]. The Plaintiffs have also filed Objections to Magistrate's denial of their Motion to Amend [Doc. 31]. Those Objections are addressed in a separate order.

to submit a recommendation for its disposition. On May 6, 2021, the Magistrate Judge issued a Memorandum and Recommendation recommending that the Defendant's Motion to Dismiss be granted and that the Plaintiffs' Complaint be dismissed without prejudice. [Doc. 28]. On May 18, 2021, the Plaintiffs filed Objections to the Magistrate Judge's Memorandum and Recommendation. [Doc. 29]. The Defendant filed its Objections to the Magistrate Judge's Memorandum and Recommendation and Response to the Plaintiffs' Objections on June 1, 2021. [Doc. 33].

## II. STANDARD OF REVIEW

### A. Standard of Review Applicable to Objections to Magistrate Judge's Memorandum and Recommendation

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (emphasis added). The district court "may accept, reject, or modify the findings or recommendations and may, but is not required to, receive further evidence." Blue Ridge Public Safety, Inc. v. Ashe, 712 F. Supp. 2d 440, 446 (W.D.N.C. Apr. 30, 2010). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to

alert the district court of the true ground for the objection." <u>United States v.</u> <u>Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007).

## B. Rule 12(b)(1) Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject-matter of the lawsuit. "The plaintiff has the burden of proving that subject matter jurisdiction exists." <u>Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.</u>, 166 F.3d 642, 647 (4th Cir. 1999). Moreover, "a federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction." <u>Lovern v.</u> <u>Edwards</u>, 190 F.3d 648, 654 (4th Cir. 1999). "A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." <u>S. Walk at Broadlands</u> <u>Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC</u>, 713 F.3d 175, 185 (4th Cir. 2013).

A defendant may raise a "facial challenge" to subject matter jurisdiction by asserting "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009) (quoting <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)). When a defendant makes a facial challenge to subject matter jurisdiction,

4

"the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6)" motion.  Id.  Thus, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  Id.

When a plaintiff seeks to recover against the United States and "the United States has not waived its sovereign immunity, [the] plaintiff's claim . . . should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  Anderson v. United States, 669 F.3d 161, 164 (4th Cir. 2011) (citing Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995)).

### C.  Rule 12(b)(3) Standard of Review

Federal Rule of Civil Procedure 12(b)(3) provides that the Court may dismiss an action for improper venue.  In reviewing a Rule 12(b)(3) motion, the Court views the facts presented "in the light most favorable to the plaintiff."  Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 366 (4th Cir. 2012) (citing Global Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 224 (2d Cir. 2011)).  The Court may "freely consider evidence outside the pleadings" when ruling on a Rule 12(b)(3) motion.  Sucampo Pharm., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006).  "A plaintiff is obliged, however, to make only a prima facie showing of proper venue in

order to survive a motion to dismiss." Aggarao, 675 F.3d at 366 (citing Mitrano v. Hawes, 377 F.3d 402, 405) (4th Cir. 2004)). A case filed in an improper venue must be dismissed, or, if in the interest of justice, transferred to a district in which it could have been brought. 28 U.S.C. § 1406(a).

### D. Rule 12(b)(5) Standard of Review

Federal Rule of Civil Procedure 12(b)(5) provides that a court may dismiss an action for insufficient service of process. See Hyman v. City of Gastonia, 466 F.3d 284, 286 (4th Cir. 2006). "Once the defendant challenges service, [t]he plaintiff bears the burden of establishing that service of process has been accomplished in a manner that complies with Rule 4 of the Federal Rules of Civil Procedure." Honeycutt v. United States Postal Service, No. 3:20-CV-00449-MOC-DCK, 2021 WL 3009017 at *1 (July 15, 2021) (internal quotation marks and citation omitted). "If a defendant is not served within 90 days after the complaint is filed" then Rule 4(m) requires the Court to "dismiss the action without prejudice . . . or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

### E. Rule 12(b)(6) Standard of Review

The central issue for resolving a motion under Federal Rule of Civil Procedure 12(b)(6) is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In

6

considering a defendant's motion, the Court accepts the plaintiff's allegations as true and construes them in the light most favorable to the plaintiff. <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 255 (4th Cir. 2009); <u>Giacomelli</u>, 588 F.3d at 190-92.

Although the Court accepts well-pled facts as true, the Court is not required to assume the truth of "bare legal conclusions." <u>Aziz v. Alcolac, Inc.</u>, 658 F.3d 388, 391 (4th Cir. 2011). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012).

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Consumeraffairs.com</u>, 591 F.3d at 256. Namely the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570; <u>see also</u> <u>Consumeraffairs.com</u>, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>see also</u> <u>Consumeraffairs.com</u>, 591 F.3d at 255. The mere

possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## III. DISCUSSION

The Defendant "moves to dismiss the [Plaintiffs'] [C]omplaint pursuant to Rules 12(b)(1), (b)(5), and (b)(6) and Rule 4(m) of the Federal Rules of Civil Procedure." [Doc. 21 at 1]. According to the Defendant, the Plaintiffs' Complaint fails to establish subject matter jurisdiction, and, "even if subject matter jurisdiction were found to exist, any claims presented in this action should be dismissed under Rule 12(b)(6) . . . because they fail to state claims for which relief may be granted . . . . , including a failure to satisfy and allege the requirements of N. C. R. Civ. P. 9(j)." [Id. at 2]. The Defendant also asserts that the "[C]omplaint should be dismissed for insufficient service of process under Rules 4(m) and 12(b)(5)" or dismissed or transferred under Rule 12(b)(3). [Id. at 1, 3].

### A. Claims asserted by Katherine Monica Vickers

In the Memorandum and Recommendation, the Magistrate Judge *sua sponte* raised the issue of Article III standing as to Plaintiff Katherine Monica

Vickers. [Doc. 28 at 12]. The Magistrate Judge concluded that Ms. Vickers does not have standing because she is deceased and, therefore, recommended that "any claims asserted by Ms. Vickers be dismissed without prejudice for lack of subject matter jurisdiction." [Id. at 13].

The Plaintiffs object to the Magistrate Judge's recommendation to dismiss "Vickers' personal claims" and assert that the "Plaintiffs did not intend to claim Vickers was bringing her own claims." [Doc. 29 at 8]. The language of the Plaintiffs' Complaint contradicts this assertion. In their Complaint, the Plaintiffs assert that "*Ms. Vickers seeks recovery* of all other damages to which she is entitled . . . ." [Doc. 1 at ¶ 137] (emphasis added).

Since Ms. Vickers is deceased, any claims that she may have had can only be brought by the personal representative of her estate. A deceased person has no standing. See House v. Mitra QSR KNE LLC, 796 F. App'x 783, 787 (4th Cir. 2019). The Plaintiffs do not dispute that Ms. Vickers is deceased. In fact, the Defendant's alleged responsibility for her death is central to their claim. [Doc. 1 at ¶¶ 112-117].

After a careful review of the Memorandum and Recommendation, the Court concludes that the Magistrate Judge's conclusion that Ms. Vickers lacks standing is correct and is consistent with current case law. The Court overrules the Plaintiffs' Objection and accepts the Magistrate Judge's

9

recommendation that any claims asserted by Ms. Vickers should be dismissed without prejudice for lack of subject matter jurisdiction.

## B. Contract Claim

The Defendant argues that the Plaintiffs' contract claim should be dismissed because "[f]ederal district courts do not enjoy subject matter jurisdiction over claims against the United States sounding in contract and alleging damages over $10,000 . . . ." [Doc. 22 at 18]. In the Memorandum and Recommendation, the Magistrate Judge concluded that this Court does not have jurisdiction over the Plaintiffs' contract claim because the Plaintiffs allege damages exceeding the Court's $10,000 jurisdictional limit. [Doc. 28 at 21]. The Magistrate Judge also concluded that transferring the Plaintiffs' contract claim to the United States Court of Federal Claims would be futile because the "Plaintiffs have not alleged sufficient facts that would support recovery under a breach of contract theory." [Id. at 22]. Accordingly, the Magistrate Judge recommended that the Plaintiffs' contract claim be dismissed without prejudice for lack of subject matter jurisdiction. [Id.].

The Plaintiffs object to the Magistrate Judge's recommendation to dismiss their contract claim instead of transferring it to the Court of Federal Claims because the "Plaintiffs' contract claims are based on the factual contract Vickers uniquely entered into with the Defendant when she was

granted 100% service connected disability care," and "as a 100% service connected disabled veteran, [Vickers] had a guarantee to property rights that were not provided by the Defendant."  [Doc. 29 at 15-16].

The Tucker Act provides, in pertinent part, that "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ."  28 U.S.C. § 1491(a)(1).  The Little Tucker Act provides that federal district courts have concurrent jurisdiction to decide contract claims involving the United States that do not exceed $10,000.  28 U.S.C. § 1346(a)(2).  "If a district court finds that it is without jurisdiction over a case before it, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed."  Reaves v. Hagel, No. 5:12-CV-795-FL, 2013 WL 5674981 at *3 (E.D.N.C. Oct. 17, 2013) (internal quotation marks and citation omitted).  However, "[i]nstead of transferring a case, a district court may dismiss a case where a claim is 'plainly barred' and the court 'has no doubt that the Court of Claims would summarily grant the government's motion to dismiss.'"  Id. (quoting United States v. Welborn, 495 F. Supp. 833, 837 (M.D.N.C. Aug. 26, 1980)).

The Court of Claims has "held that military healthcare services are governed by statute and not by a contract with the government." Kelly-Leppert v. United States, No. 21-955C, 2021 WL 2853171 at *4 (Fed. Cl. July 8, 2021) (citing Estate of Smallwood v. United States, 130 Fed. Cl. 395, 399-400, aff'd 717 F. App'x 1007 (Fed. Cir. 2018) (per curiam)); see also Schism v. United States, 316 F.3d 1259, 1276 (Fed. Cir. 2002) (explaining that "military health care benefits . . . have long been exclusively a creature of statute, not contract"). Thus, the Court of Claims "has dismissed contract-based claims seeking to recover military pay or military healthcare benefits for lack of subject-matter jurisdiction." Kelly-Leppert, 2021 WL 2853171 at *4. The Plaintiffs' contract claim is centered on the allegation that the Defendant failed to provide health care services owed to Ms. Vickers. [See Doc. 1 at ¶¶ 118-124; Doc. 29 at 15]. Because "there is no contract-based jurisdiction in the United States Court of Federal Claims for military pay or veterans benefit claims," Kelly-Leppert, 2021 WL 2853171 at *4, transferring the Plaintiffs' contract claim to the Federal Court of Claims would be futile.

After a careful review of the Magistrate Judge's recommendation regarding the Plaintiffs' contract claim, the Court concludes that the Magistrate Judge's proposed conclusions of law are correct and are consistent with current case law. Therefore, the Court overrules the

Plaintiffs' Objection and accepts the Magistrate Judge's recommendation that the Plaintiffs' contract claim should be dismissed without prejudice for lack of subject matter jurisdiction.

### C. Claims Based on Events at the WDCVAMC and the DVAMC

The Defendant argues that all of the Plaintiffs' tort claims should be dismissed because the Plaintiffs failed to satisfy the FTCA's administrative exhaustion requirement. [Doc. 22 at 10]. Moreover, the Defendant specifically asserts that all of the Plaintiffs' claims related to events at the WDCVAMC and the DVAMC should be dismissed because the Plaintiffs never presented an administrative claim to the Defendant based on those events. [Id. at 15-17]. In the Memorandum and Recommendation, the Magistrate Judge concluded that the Plaintiffs failed to present an administrative claim based on the events at the WDCVAMC and the DVAMC. [Doc. 28 at 17-18]. Accordingly, the Magistrate Judge recommended that the Plaintiffs' claims based on the events at the WDCVAMC and the DVAMC be dismissed without prejudice because the Plaintiffs failed to satisfy the FTCA's administrative exhaustion requirement for those claims. [Id.].

The Plaintiffs object to the Magistrate Judge's recommendation to dismiss their claims based on Ms. Vickers treatment at the WDCVAMC and the DVAMC. [Doc. 29 at 11]. First, the Plaintiffs argue that their

administrative claim discussing Ms. Vickers' treatment at the CGVAMC "placed Defendant on notice" and "should have inspired Defendant's comprehensive review of Vickers' entire medical record," including the events at the WDCVAMC and the DVAMC. [Id. at 12].

Prior to filing a lawsuit under the FTCA, "a plaintiff must first have presented her claim to the appropriate federal agency for determination within two years of the claim's accrual." Wood v. United States, 209 F. Supp. 3d 835, 840 (M.D.N.C. July 21, 2016) (citing Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994)). "[S]ufficient presentment of a claim to an agency [requires] 1) written notice sufficient to cause the agency to investigate, and 2) a sum-certain value on the claim." Ahmed, 30 F.3d at 517. As explained by the Magistrate Judge, [Doc. 28 at 17], because the Plaintiffs' administrative claim did not mention the events that took place at the WDCVAMC or the DVAMC, [see Doc. 21-1 at 6-14], the claim did not provide sufficient notice to the Defendant to investigate those events.

In their Objections, the Plaintiffs further argue that the Defendant "voluntarily waived their right to administrative exhaustion . . . when they

voluntarily issued their final denial letter" in July of 2020.[2]  [Doc. 29 at 11].

The Defendant's July 22, 2020 letter to Ms. Russe reads, in part:

> Since you have filed suit in the United States District Court for the Western District of North Carolina, we have determined that the claim is not amendable to administrative resolution. Accordingly, we must deny your claim.  This notice constitutes final administrative action on this claim under the Federal Tort Claims Act (FTCA) against the United States.

[Doc. 24-6].  The Plaintiffs do not cite any authority for their assertion that this letter constitutes a waiver of the FTCA's administrative exhaustion requirement.  However, "[i]t is well-settled that the requirement of filing an administrative claim is jurisdictional and may not be waived."  Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986).  Thus, this letter notifying Ms. Russe that the administrative claim the Plaintiffs *did* submit was denied cannot be a waiver of the administrative exhaustion requirement for the Plaintiffs claims related to the WDCVAMC and the DVAMC.

The Plaintiffs also continue to assert that they amended their original administrative claim to include claims based on the events at the WDCVAMC and the DVAMC by mailing a copy of their Complaint to Counsel for the Regional VA Office Andrew Murray (the United States Attorney for this

---

[2] In their Objections, the Plaintiffs assert that the Defendant's final denial letter was dated July 22, 2019.  [Doc. 29 at 11].  However, the exhibit cited by the Plaintiffs in their Objections is dated July 22, 2020.  [Doc. 24-6].

District), VA Chief Counsel Dan Rattray, and United States Attorney General William Barr in June of 2020. [See Doc. 29 at 14]. While a claimant may amend "at any time prior to final Department of Veterans Affairs action or prior to the exercise of the claimant's option [to file suit] under 28 U.S.C. [§] 2675(a)," once an amendment has been filed, "the Department of Veterans Affairs shall have 6 months in which to make a final disposition of the claim as amended and *the claimant's option under 28 U.S.C. [§] 2675(a) shall not accrue until 6 months after the filing of the amendment.*" 38 C.F.R. § 14.604(c) (emphasis added). Here, the Plaintiffs filed suit only one month after "amending" their claim. [Doc. 1]. Thus, as explained by the Magistrate Judge in the Memorandum and Recommendation, [Doc. 28 at 18 n.7], even if the Plaintiffs had been successful in amending their administrative claim by mailing a copy of their Complaint before filing suit, the Plaintiffs' entire Complaint, including their claims based on the events at the WDCVAMC and the DVAMC, would be subject to dismissal for failure to exhaust administrative remedies.[3]

---

[3] In their Objections to the Memorandum and Recommendation, the Plaintiffs also assert that their "amended claims" should be admitted "as they relate back pursuant to Fed. R. Civ. P. 15(c)(1)(A) and (B)" because the Plaintiffs obtained additional medical records showing negligence at the WDCVAMC that were allegedly concealed by the Defendant. [Doc. 29 at 13]. Federal Rule of Civil Procedure 15 refers to pleadings in federal court, not administrative claims filed with a federal agency. It is unclear whether the Plaintiffs are using the phrase "amended claims" here to (1) again refer to their argument that they

After a careful review of the Magistrate Judge's recommendation regarding these claims, the Court concludes that the Magistrate Judge's proposed conclusions of law are correct and are consistent with current case law. Accordingly, the Court overrules the Plaintiffs' Objections and accepts the Magistrate Judge's recommendation that the Plaintiffs' claims based on the events at the WDCVAMC and the DVAMC should be dismissed without prejudice for lack of subject matter jurisdiction.

## D. Gender Discrimination Claim

In the Motion to Dismiss, the Defendant does not argue specific grounds for dismissal of the Plaintiffs' gender discrimination claim and instead more generally argues that the Plaintiffs' claims brought under the FTCA, "are deficient because [they do not satisfy] the particular requirements of the FTCA." [Doc. 22 at 10]. In the Memorandum and Recommendation, the Magistrate Judge concluded that the administrative claim presented by

---

amended their administrative claim in June of 2020, which the Court has addressed above, or (2) refer to their attempt to file an Amended Complaint in this action, [see Doc. 17]. To the extent that the Plaintiffs are attempting to add any new claims related to the alleged negligence of the WDCVAMC through their Amended Complaint [Doc. 17-2], the fact that the Plaintiffs obtained additional medical records related to possible negligence at the WDCVAMC and subsequently sought to amend their Complaint does not excuse the Plaintiffs from the FTCA's administrative exhaustion requirement. Plaintiffs *must* present an administrative claim to the appropriate federal agency before filing a lawsuit about that claim. Ahmed, 30 F.3d at 516. Here, the Plaintiffs have not presented an administrative claim based on the events at the WDCVAMC.

the Plaintiffs "did not provide facts indicating that Ms. Vickers placement at [the Pruitt-Health facility in Raleigh] was discriminatory." [Doc. 28 at 17]. Accordingly, the Magistrate Judge recommended that the Plaintiffs' claim for gender discrimination be dismissed without prejudice because the Plaintiffs failed to present an administrative claim for gender discrimination, and, thus, the Court lacks subject matter jurisdiction over that claim. [Id. at 17-18].

The Plaintiffs object to the Magistrate Judge's recommendation to dismiss their claim for gender discrimination and assert that "[a] facial reading of the entirety of Plaintiffs' initial administrative claim indicates Plaintiffs' intentional claim of gender discrimination." [Doc. 29 at 2]. After the Magistrate Judge issued the Memorandum and Recommendation, the Plaintiffs also filed a Motion to Supplement Evidence in Plaintiffs' Objections to Magistrate's Memorandum and Recommendation ("Motion to Supplement Evidence"). [Doc. 32]. The Plaintiffs seek to include in the record an unsigned VA Form 10-0381 and assert that "as early as June 1, 2020, Plaintiffs submitted a proper Civil Rights Discrimination Complaint to the Defendant, claiming gender discrimination . . . ." [Id. at 1; Doc. 32-1]. The Court will grant the Motion to Supplement Evidence and consider this evidence presented by the Plaintiffs.

The plaintiff bears the burden of demonstrating that an administrative claim has been presented prior to filing suit under the FTCA. Crack v. United States, 694 F. Supp. 1244, 1248 (E.D. Va. Sept. 12, 1988). A claim is "presented when a Federal agency *receives* from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death . . . ." 28 C.F.R. § 14.2(a) (emphasis added). "Presentment definitionally requires receipt; sending or mailing is not enough." Crack, 694 F. Supp. at 1246 (holding that a claim was not presented where the plaintiff mailed written notice of a claim, but the agency did not receive those mailings); see also Barlow v. AVCO Corp., 527 F. Supp. 269, 273 (E.D. Va. Dec. 3, 1981) (same); Dembeck-Weiss v. United States, No. CCB-06-3206, 2007 WL 1657418 at *7 (D. Md. May 21, 2007) (holding that the plaintiffs did not amend their administrative claim where there was no independent evidence that the defendant had received an amended claim).

The Defendant states that the VA received three administrative claims from the Plaintiffs: an unexecuted SF-95 dated October 8, 2019 and stating an administrative claim arising from events at the CGVAMC; an executed SF-95 dated December 12, 2019 and stating the same facts as the

19

unexecuted October 8, 2019 form; and an executed SF-95 dated December 6, 2019 and stating a claim for property damage caused by installing an outdoor chair lift at Ms. Vickers' home. [Doc. 21-1 at 3-4]. According to the Defendant, a search of the Defendant's "national database for any [and] all tort claim(s) filed by the named Plaintiffs . . . did not produce any record of a tort claim filed by any of the named Plaintiffs, beyond [these] three filings . . . ." [Id. at 3]. The Plaintiffs do not allege any facts tending to show that their claim for gender discrimination submitted via the unsigned VA Form 10-0381 was *received* by the Defendant. The Plaintiffs' assertion that the form was *mailed* is insufficient to demonstrate that an administrative claim for gender discrimination was properly presented under the FTCA.

After a careful review of the Magistrate Judge's recommendation, the Court concludes that the Magistrate Judge's proposed conclusion that the Plaintiffs did not present an administrative claim for gender discrimination is correct and is consistent with current case law. Accordingly, the Court overrules the Plaintiffs' Objection and accepts the Magistrate Judge's recommendation that the gender discrimination claim should be dismissed without prejudice for lack of subject matter jurisdiction.

### E. Claims for Medical Negligence, Wrongful Death and Survival, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress Based on Events at the CGVAMC

Having dismissed the Plaintiffs' contract claim, gender discrimination claim, claims based on the events at the WDCVAMC and the DVAMC, and claims asserted by Plaintiff Katherine Vickers, the Court now turns to the Plaintiffs' remaining claims related to Ms. Vickers' treatment at the CGVAMC. Accordingly, the Court will review the Magistrate Judge's remaining recommendations and the Defendant's other arguments not reached by the Magistrate Judge to determine whether to dismiss the Plaintiffs' remaining claims for medical negligence, wrongful death and survival, intentional infliction of emotional distress, and negligent infliction of emotional distress as those claims relate to the events at the CGVAMC.

### i. North Carolina Rule 9(j)

In the Motion to Dismiss, the Defendant asserts that the Plaintiffs' medical negligence claims should be dismissed under Rule 12(b)(6) because "Plaintiffs allege . .. medical malpractice by the health care providers of the VA . . . but [do] not allege pre-suit medical review" as required by Rule 9(j) of the North Carolina Rules of Civil Procedure. [Doc. 22 at 20-21]. After recommending that some of the Plaintiffs' claims be dismissed on other grounds, the Magistrate Judge recommended that the

Plaintiffs' remaining claims for wrongful death and survival, intentional infliction of emotional distress, negligent infliction of emotional distress, and medical negligence as those claims relate to Ms. Vickers' treatment at the CGVAMC be dismissed for failure to comply with N.C. Rule 9(j).[4] [Doc. 28 at 36]. The Plaintiffs now object to the Magistrate Judge's recommendation that these claims be dismissed for failure to include a N.C. Rule 9(j) certification. [Doc. 29 at 19].

N.C. Rule 9(j) provides:

> Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)(a). in failing to comply with the applicable standard of care under G.S. 90-21-12 shall be dismissed unless:
>
> (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
>
> (2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person

---

[4] In the Memorandum and Recommendation, the Magistrate Judge categorizes the Plaintiffs' claim for ordinary negligence "based on the actions of the CGVAMC" as part of the Plaintiffs' medical negligence claims. [Doc. 28 at 29]. However, the Plaintiffs' Complaint does not assert a claim for ordinary negligence based on the actions of the CGVAMC. [Doc. 1 at ¶¶ 98-135].

that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or

(3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. R. Civ. P. 9(j). Thus, N.C. Rule 9(j) "requires that any complaint alleging medical malpractice contain the pre-filing certification of a medical expert," unless the doctrine of *res ipsa loquitur* applies. Lauer v. United States, No. 1:12-CV-00041-MR, 2013 WL 566124 at *3 (W.D.N.C. Feb. 13, 2013).

Federal district courts sitting in North Carolina have previously held that the pre-filing certification requirement in N.C. Rule 9(j) "is a substantive element to allege that the defendant has failed to comply with the appropriate standard of medical care." Id. at *4; see also Williams v. Haigwood, No. 5:08-CT-3138-BO, 2012 WL 4483883 at *6 (E.D.N.C. Sept. 27, 2012) ("In North Carolina there are substantive legal requirements that a person must follow to pursue a medical malpractice claim."); Hall v. United States, 5:10-CT-3220-BO, 2013 WL 163639 at *2 (E.D.N.C. Jan. 15, 2013) (same); Boula v. United States, No. 1:11-CV-00366, 2013 WL 1343547 at *2 (M.D.N.C. Apr. 2, 2013) ("[F]ederal district courts in North Carolina have generally applied Rule 9(j) as a substantive requirement in medical malpractice claims

23

asserted pursuant to the FTCA.").  The Fourth Circuit has also held that "a Rule 9(j) certification is a mandatory requirement for a plaintiff in a North Carolina medical malpractice action."  Littlepaige v. United States, 528 F. App'x 289, 292-93 (4th Cir. 2013).

After the Magistrate Judge issued the Memorandum and Recommendation, the United States Court of Appeals for the Fourth Circuit issued its opinion in Pledger v. Lynch, holding that West Virginia's certification requirement for medical negligence claims brought under the FTCA was displaced by the Federal Rules of Civil Procedure.[5]  Pledger v. Lynch, 5 F.4th 511, 523-24 (4th Cir. 2021).  The West Virginia statute at issue in Pledger required plaintiffs bringing medical malpractice claims under West Virginia law to "serve on each putative defendant, at least thirty days prior to filing suit, a notice of claim that includes a 'screening certificate of merit' from a health care provider who qualifies as an expert under state law." Id. at 518 (citing W. Va. Code § 55-7B-6(a)-(b)).  The Fourth Circuit applied the two-step framework articulated by the Supreme Court in Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co. to "mediat[e] any potential conflict" between West Virginia's pre-suit certification requirement and the

---

[5] The Plaintiffs have filed a Motion to Adopt Supplemental Authority requesting that the Court "adopt the holding in Pledger v. Lynch . . . ."  [Doc. 40].  That motion is granted to the extent that the Court recognizes Pledger as subsequent authority.

Federal Rules of Civil Procedure.  Id.  Under the first step, the Fourth Circuit asked whether the Federal Rules "answer[] the question in dispute."  Id. at 519 (quoting Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398, 130 S. Ct. 1431, 176 L.E.2d 311 (2010)).  Under the second step, "[i]f the Federal Rules do answer that question, then they govern, notwithstanding West Virginia's law – unless . . . [the court] find[s] the relevant Federal Rules invalid under the Constitution or the Rules Enabling Act."  Id.

The Fourth Circuit held that the question of "whether a plaintiff must obtain an expert certificate of merit before he may file and maintain a medical malpractice suit" is answered in the negative by the Federal Rules of Civil Procedure.  Id. at 520.  The Circuit Court explained that Federal Rule of Civil Procedure 8 "requires only a 'short and plain statement' of a plaintiff's claim[;]" Rule 9 requires a heightened pleading standard only with regard to claims "alleging fraud or mistake[;]" Rule 11 "expressly provides that 'a pleading need not be verified or accompanied by an affidavit[;]'" and, to survive a motion to dismiss, Rule 12 requires only that a plaintiff plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at 519-20 (internal citations omitted).  As such, "West Virginia's [certificate requirement could] not apply to [the plaintiff's]

federal-court action under step one of the <u>Shady Grove</u> framework" because it required "something extra" to plead a claim for medical negligence that is not required under the Federal Rules of Civil Procedure.  <u>Id.</u> at 520.

Under the second step of <u>Shady Grove</u>, the Fourth Circuit held that "[t]he Federal Rules of Civil Procedure enjoy presumptive validity under both the constitutional and statutory constraints" of Congress's rulemaking power and the Rules Enabling Act and noted that "the Supreme Court has [s]o far . . . rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act."  <u>Id.</u> at 521 (internal quotation marks and citations omitted).  Accordingly, the Fourth Circuit concluded that "the Federal Rules, not [West Virginia's certificate requirement] govern [the plaintiff's] claim in federal court."  <u>Id.</u>

Like West Virginia's certificate requirement, N.C. Rule 9(j) requires plaintiffs filing a claim for medical malpractice to obtain pre-filing certification from a medical expert.  N.C. R. Civ. P. 9(j).  Under the reasoning of Pledger, however, the question of "*whether a plaintiff must obtain an expert certificate of merit before he may file and maintain a medical malpractice suit*" is already answered by Rules 8, 9, 11, and 12 of the Federal Rules of Civil Procedure.  <u>Id.</u> at 519-20 (emphasis added).  North Carolina Rule 9(j) conflicts with the Federal Rules because it imposes "an additional, heightened pleading

26

requirement for medical malpractice claims that is not contained in the Federal Rules . . . ."  Saylon v. United States, No. 5:20-CV-176-FL, 2021 WL 3160425 at *4 (E.D.N.C. July 26, 2021).

"[I]f a valid Federal Rule answers the question at issue, then . . . the Federal Rule governs, without more."  Pledger, 5 F.4th at 521.  In light of Pledger, N.C. Rule 9(j) does not apply in federal court.  Saylon, 2021 WL 3160425 at *4 ("Under the reasoning of Pledger, Rule 9(j) is not a substantive requirement for a medical malpractice claim, but rather a heightened pleading requirement which this court cannot apply in federal court to a FTCA claim."); see also Richardson v. Wellpath Health Care, No. 1:20-CV-777, 2021 WL 5235334 at *11 (M.D.N.C. Nov. 10, 2021) (recommending against dismissal of the plaintiff's medical malpractice case, in part, because Pledger has "rendered Rule 9(j) a nullity in federal court").  Accordingly, in light of the subsequent authority presented, the Court rejects the Magistrate Judge's recommendation to dismiss the Plaintiffs' remaining claims for medical negligence arising from events at the CGVAMC, wrongful death and survival, intentional infliction of emotional distress, and negligent infliction of emotional distress for failure to include a pre-filing certification under N.C. Rule 9(j) and overrules the Plaintiffs' Objection as moot.

### ii. Timeliness of Plaintiffs' Administrative Claim

In the Motion to Dismiss, the Defendant further argues that the Plaintiffs' claims should be dismissed because the Plaintiffs failed to present their administrative claim within the FTCA's two-year statute of limitations period. [Doc. 22 at 11-15]. According to the Defendant, the Plaintiffs' claims accrued, at the latest, in November of 2017 when the Duke Robert Tisch Cancer Center confirmed Ms. Vickers' brain tumor as an oligodendroglioma brain tumor, and, therefore, the two-year statute of limitations period had had already expired when the Plaintiffs presented their administrative claim in the form of an executed SF-95 on December 12, 2019. [Id.].

In his Memorandum and Recommendation, the Magistrate Judge concluded that the issue of whether the Plaintiffs' administrative claim was timely presented "involves factual determinations that could be considered more fully on a more complete record." [Doc. 28 at 26 n.8]. Thus, the Magistrate Judge recommended that the Defendant's "Motion to Dismiss, to the extent it seeks dismissal of Plaintiff's claims on the theory that they were untimely presented, be denied." [Id. at 27].

The Defendant objects to the Magistrate Judge's recommendation that the Plaintiffs' claims should not be dismissed based on a theory that the claims were untimely presented "insofar as [the Memorandum and

Recommendation] turns on North Carolina's malpractice statute of repose .

. . ." [Doc. 33 at 2]. The Defendant "does not object to the [Memorandum

and Recommendation] as it to relates to timeliness insofar as that turns on

questions of *statutes of limitations* or claims *accrual*." [Id.]. However, the

Defendant asserts that, under North Carolina's malpractice statute of repose:

> [C]ertain of Plaintiffs' claims (to the extent that Plaintiffs allege
> them to arise from the decedent's medical treatment . . . [at] the
> Washington D.C. VA Medical Center (Doc. 1 ¶ 27)) simply did
> not exist at any of the times . . . suggested for the accrual of the
> Plaintiffs' claims generally, much less at the July 2020 filing of
> the complaint in this action.

[Id.]. Thus, the Defendant argues that the Plaintiffs' claims arising from Ms.

Vickers' treatment at the WDCVAMC are barred by North Carolina's statute

of repose. [Id. at 4].

Whether the Plaintiffs presented their administrative claim within the

FTCA's two-year statute of limitations period is dependent on a factual

dispute. The Defendant's argument that some of the Plaintiffs' claims are

barred by North Carolina's malpractice statute of repose pertains only to the

Plaintiffs' claims based on Ms. Vickers' treatment at the WDCVAMC. [Id. at

2-8]. The Plaintiffs' claims related to events at the WDCVAMC are

addressed elsewhere in this Order and are dismissed without prejudice on

other grounds. Accordingly, because the Court need not reach the

Defendant's Objection, the Objection is overruled as moot.

After a careful review of the Magistrate Judge's recommendation regarding the timeliness of the Plaintiffs' claims under the FTCA's statute of limitations, the Court concludes that the Magistrate Judge's proposed conclusion of law is correct and is consistent with current case law. Therefore, the Court accepts the Magistrate Judge's recommendation to deny the Defendant's Motion to Dismiss to the extent that it seeks dismissal of the Plaintiffs' claims on the theory that they were not presented within the FTCA's two-year statute of limitations period.[6]

### iii. Claimants Presented in Plaintiffs' Administrative Claim

The Defendant also argues that any claims asserted by Ms. Russe in her individual capacity should be dismissed because the administrative claim presented to the Defendant was presented only by the "Estate of Katherine Monica Vickers."[7]  [Doc. 22 at 17].  In the Memorandum and Recommendation, the Magistrate Judge articulated that he was "not

---

[6] The Plaintiffs also "object to [the] Magistrate's recommendation to dismiss based on timeliness of claims, under 12(b)(6)."  [Doc. 29 at 17].  The Plaintiffs misread the Memorandum and Recommendation.  The Magistrate Judge recommended that the Plaintiffs claims *not* be dismissed at this stage on the theory that they were untimely presented.  [Doc. 28 at 27] (emphasis added).  Accordingly, the Plaintiffs' Objection is overruled.

[7] Similarly, the Defendant further argues that any claims asserted by Ms. Vickers should be dismissed because Ms. Vickers also failed to present an individual administrative claim.  [Doc. 22 at 17].  Because the Court dismisses any claims asserted by Ms. Vickers for lack of subject matter jurisdiction, the Court does not reach this argument.

persuaded that the presentation of forms by the Estate and Russe concerning claims stemming from Ms. Vickers' medical treatment by the CGVAMC was inadequate" to also satisfy the presentment requirement for claims asserted by Ms. Russe individually. [Doc. 28 at 19]. However, the Magistrate Judge did not clearly recommend whether any of the claims asserted by Ms. Russe individually should be dismissed on this ground.[8] Accordingly, the Court will consider whether the administrative claim presented by the Plaintiffs presents a claim on behalf of both the Estate of Katherine Monica Vickers and Ms. Russe individually.

A claimant satisfies her burden of presentment if her notice to the relevant federal agency "(1) is sufficient to enable the agency to investigate and (2) places a 'sum certain' value on her claim." Ahmed, 30 F.3d at 517 (citing Adkins v. United States, 896 F.2d 1324, 1326 (11th Cir. 1990)). The December 2019 SF-95 submitted by Ms. Russe lists "Estate of Katherine Monica Vickers. Executor of Estate, Rupa Vickers Russe" as the claimant and is signed by "Rupa Vickers Russe." [Doc. 21-1 at 6]. Among the claims listed in the SF-95 are those for the "[p]resent cash value of deceased and

---

[8] In their Objections, the Plaintiffs "object to [the] Magistrate's recommendation to dismiss for failure to present claimants." [Doc. 29 at 14]. Because the Magistrate Judge did not recommend that the Plaintiffs' claims be dismissed for failing to list all of the Plaintiffs as claimants on the Plaintiffs' administrative claim, the Plaintiffs' Objection is overruled.

loss of consortium, tangible and intangible, *suffered by deceased's three surviving children*, and three surviving grandchildren" because of negligent medical care at the CGVAMC.  [Id. at 8] (emphasis added).  Under these circumstances, the December 2019 SF-95 was adequate to enable the Defendant to investigate claims related to Ms. Vickers' treatment at the CGVAMC brought by both the Estate and Ms. Russe individually.  Therefore, the Court denies the Defendant's Motion to Dismiss on this ground.[9]

### iv.    Insufficient Service of Process and Improper Venue

The Defendant also raised two additional grounds for dismissing the Plaintiffs' Complaint that were not considered by the Magistrate Judge.  First, the Defendant argues that the Plaintiffs' claims should be dismissed under Rule 12(b)(5) of the Federal Rules of Civil Procedure because the Plaintiffs failed to serve the Defendant within 90 days after the Complaint was filed. [Doc. 22 at 23].  Second, the Defendant argues under Rule 12(b)(3) that the Plaintiffs' claims based on the conduct of the WDCVAMC should be dismissed or transferred to the United States District Court for the District of Columbia.  [Doc. 22 at 23-25].  The Memorandum and Recommendation did

---

[9] The Court notes, however, that nothing in the record reflects that any other child or grandchild of Ms. Vickers has presented a claim.  The only question before the Court is whether this SF-95 at issue may be sufficient, at this stage, to present a claim for the Estate and for Ms. Russe individually.

not reach either of these arguments because the Magistrate Judge's recommendations disposed of the entirety of the Plaintiffs' Complaint on other grounds. [Doc. 28 at 37 n.13]. Because the Court dismisses the Plaintiffs' claims arising from the events at the WDCVAMC for failure to satisfy the FTCA's administrative exhaustion requirement, the Court does not consider the Defendant's argument regarding venue. However, in light of the Court's conclusion rejecting the Magistrate Judge's recommendation to dismiss the Plaintiffs' other claims based on Ms. Vickers' treatment at the CGVAMC for failure to comply with N.C. Rule 9(j), the Court will consider whether those claims should be dismissed for insufficient service of process.

Rule 4(m) requires that "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). This 90-day service period "is tolled while the district court considers an in forma pauperis complaint." Scott v. Maryland State Dep't of Labor, 673 F. App'x 299, 304 (4th Cir. 2016) (citing Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir. 2010)).

The Plaintiffs filed their Complaint and an application to proceed in forma pauperis on July 16, 2020. [Doc. 1; Doc. 2]. On July 24, 2020, the Plaintiffs' application was denied by the Magistrate Judge, and the Plaintiffs

were given an opportunity to submit an amended application. [Doc. 5]. The Plaintiffs submitted an amended application on August 17, 2020, which was denied by the Magistrate Judge on August 25, 2020. [Doc. 7; Doc. 8]. On September 4, 2020, the Plaintiffs then appealed that denial, and the Court affirmed the Magistrate Judge's Order on September 21, 2020. [Doc. 10; Doc. 11]. The Defendant was served on October 16, 2020, ninety-two days after the Plaintiffs filed their Complaint. [Doc. 14]. However, because the period for service was tolled while the Court considered the Plaintiffs' application to proceed in forma pauperis, service was not improper.

### v. Conclusion

For all these reasons, the Court denies the Defendant's Motion to Dismiss with regard to the Plaintiffs' remaining claims for medical negligence, wrongful death and survival, intentional infliction of emotional distress, and negligent infliction of emotional distress based on Ms. Vickers' treatment at the CGVAMC.[10] In their Complaint, the Plaintiffs do not specify whether they are bringing claims for wrongful death and survival, intentional

---

[10] In the Memorandum and Recommendation, the Magistrate Judge notes that "to the extent Plaintiffs are attempting to allege a claim for intentional infliction of emotional distress, Plaintiffs do not allege 'extreme or outrageous conduct' necessary to support such a claim." [Doc. 28 at 31 n. 10]. Although it is questionable whether the Plaintiffs' have alleged sufficient facts to state a plausible claim for either intentional infliction of emotional distress or negligent infliction of emotional distress, the Defendant does not raise this argument. Accordingly, the Court does not address whether the Plaintiff has alleged sufficient facts to support these claims.

infliction of emotional distress, and negligent infliction of emotional distress based on the events at the WDCVAMC, the DVAMC, the CGVAMC, or all three facilities. [See Doc. 1 at ¶¶ 112-117, 125-131]. Because the Court dismisses all of the Plaintiffs' claims based on the events at the WDCVAMC and the DVAMC for failure to satisfy the FTCA's administrative exhaustion requirement, the Plaintiffs' claims for wrongful death and survival, intentional infliction of emotional distress, and negligent infliction of emotional distress survive *only to the extent that they are based on Ms. Vickers' treatment at the CGVAMC*.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The Memorandum and Recommendation [Doc. 28] is **ACCEPTED IN PART** and **REJECTED IN PART**;

(2) The parties' Objections to the Memorandum and Recommendation [Doc. 29; Doc. 33] are **OVERRULED**;

(3) The Plaintiffs' Motion to Supplement Evidence in Plaintiffs' Objections to Magistrate's Memorandum and Recommendation [Doc. 32] is **GRANTED**; and

(4)    The Plaintiffs' Motion to Adopt Supplemental Authority [Doc. 40] is **GRANTED** in part, to the extent that the Court recognizes the tendered case as applicable subsequent authority, otherwise denied.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Dismiss [Doc. 21] is **GRANTED IN PART,** and the following claims are hereby **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction:

(1)    Any claims asserted by Katherine Monica Vickers;

(2)    The Plaintiffs' contract claim;

(3)    The Plaintiffs' gender discrimination claim;

(4)    The Plaintiffs' claims based upon events at the WDCVAMC; and

(5)    The Plaintiffs' claims based upon events at the DVAMC.

**IT IS FURTHER ORDERED** that the Defendant's Motion to Dismiss [Doc. 21] is **DENIED IN PART** with regard to the following claims:

(1)    The Plaintiffs' medical negligence claim based upon events at the CGVAMC;

(2)    The Plaintiffs' wrongful death claim based upon events at the CGVAMC;

(3)    The Plaintiffs' negligent infliction of emotional distress claim based upon events at the CGVAMC; and

(4)    The Plaintiffs' intentional infliction of emotional distress claim based upon events at the CGVAMC.

**IT IS SO ORDERED.**

Signed: December 6, 2021

Martin Reidinger
Chief United States District Judge